IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,                                      Cr. No. 18-2665 JAP

v.

DAVID JOHNSON,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant David Johnson filed a MOTION TO SUPPRESS THE SEARCH WARRANT AND REQUEST FOR EVIDENTIARY HEARING (Doc. No. 60) ("Motion"), challenging the veracity of the affidavit supporting the warrant that authorized the search of Defendant's apartment. The Motion is fully briefed. *See* UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS THE SEARCH WARRANT AND REQUEST FOR EVIDENTIARY HEARING (Doc. No. 62) ("Response"); DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO SUPPRESS THE SEARCH WARRANT AND REQUEST FOR EVIDENTIARY HEARING (Doc. No. 70) ("Reply"). The Court granted the United States leave to file UNITED STATES' SURREPLY REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE PUSUANT TO FRANKS (Doc. No. 77) ("Surreply"). *See* Doc. No. 76. Defendant asserts that the warrant affidavit contained false statements and that the affiant made those statements recklessly or intentionally. He further asserts that absent those false statements, the affidavit is insufficient to support probable cause. Accordingly, Defendant claims he is entitled

1

to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). For the reasons stated below, the Court will deny Defendant's request for a *Franks* hearing.

**Background**

On May 23, 2018, a New Mexico Second Judicial District Court Judge signed a search warrant for the eastern most apartment on the second floor of the Zuni Princess Apartments, located at 7301 Zuni Rd SE, Albuquerque, NM 87108. Doc. No. 60-2 The judge issued the warrant based on an affidavit submitted by Albuquerque Police Department ("APD") Detective D. Irwin. Doc. No. 60-1. In the affidavit, Detective Irwin averred that he was part of the Central Narcotics Unit of the APD Special Investigations Division, and that he was experienced in the investigation of felony narcotics crimes, including undercover investigations involving the use of confidential informants. *Id.* at 1.

Detective Irwin stated in the affidavit that a confidential informant ("CI") had contacted him within the last three weeks and informed him that the CI could purchase heroin from a black male who lived in the easternmost apartment on the second floor at 7301 Zuni Blvd SE. *Id.* at 2. Detective Irwin conducted two controlled buys using the CI, the second within the 72 hours preceding his application for the warrant. *Id.* He stated that before each of the controlled buys he searched the CI for money or drugs and had found none. *Id.* Detective Irwin drove the CI to the apartment and then gave the CI money to purchase the heroin. *Id.* Detectives watched the CI walk from Detective Irwin's vehicle to the easternmost apartment on the second floor, knock and enter, and then emerge after a few minutes and return to Detective Irwin's undercover vehicle. *Id.* After re-entering the vehicle on each occasion, the CI gave Detective Irwin a plastic baggie containing a brown substance that later field tested positive for heroin. *Id.* Detective Irwin then searched the

CI again and found no more drugs or money. *Id.* Both times, the CI told Detective Irwin that "Daywoo" sold the heroin to the CI. *Id.*

Detective Irwin stated that he identified "Daywoo" as Defendant through "independent investigation," and that the CI positively identified Defendant through a photograph. *Id.* He also noted that the CI voluntarily approached the officers to offer information on drug trafficking, and that the CI was being paid for the information and knew that false statements could result in termination as a CI and possible prosecution. *Id.* Detective Irwin stated that information from the CI had been corroborated and demonstrated to be factual. *Id.*

Based on these facts, Detective Irwin requested a search warrant for the easternmost apartment on the second floor of the Zuni Princess Apartments at 7301 Zuni Rd SE, Albuquerque, NM 87108. *Id.* at 1. He stated that the view of the apartment to be searched was obstructed by a tree when looking from Zuni, but that its door faced south, was painted "read," and appeared to be made of wood. *Id.* The apartment building was tan stucco with red trim, a red roof, and a brown sign in the southwest corner of the parking lot that read "Zuni Princess Apartments, 7301 Zuni S.E." in white letters. *Id.* Detective Irwin requested permission to search and seize "[a]ny and all firearms, ammunition, casings, and firearms equipment," among other things. *Id.*

On May 31, 2018, APD officers executed the search warrant. *See* Return & Inventory, Doc. No. 60-3. Officers found Defendant and an unidentified female in the apartment. Officers did not locate any heroin or currency, but they found and seized methamphetamine, drug paraphernalia, scales, marijuana, and a firearm. *Id.* APD arrested Defendant at the time of the search.

On July 18, 2018, a New Mexico state grand jury indicted Defendant on charges of

trafficking by possession with intent to distribute and possession of a firearm or destructive device by a felon. Doc. No. 60-12. On July 25, 2018, the United States charged Defendant in federal court with being a felon in possession of a firearm and ammunition. *See* Criminal Complaint, Doc. No. 1. The State subsequently dropped the charges against Defendant. On August 23, 2019, Defendant moved to suppress the evidence obtained during the search of his apartment and requested a hearing on the veracity of the search warrant affidavit. Doc. No. 60.

## Legal Standard

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[P]robable cause to issue a search warrant . . . exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). But when, as here, a defendant challenges the truthfulness of facts contained in the warrant affidavit, courts must undertake an analysis of the effect of the allegedly false information. Under *Franks*, when a defendant challenges the veracity of an affidavit supporting a search warrant, courts assess the need for a hearing using a two-prong test. *Franks*, 438 U.S. at 155. In such cases, a hearing should be held if (1) "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. Importantly, "[t]he truthfulness at issue is that of the affiant, not the affiant's sources (other than government employees, *see United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010)); and honest errors by the affiant are not grounds for suppression." *United States v. Sanchez*, 725 F.3d 1243,

4

1247 (10th Cir. 2013); *see also Campbell*, 603 F.3d at 1228 (explaining that "negligence or innocent mistakes are insufficient to justify the exclusion of evidence."). Indeed, "[not] every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Sanchez*, 725 F.3d at 1247 (quoting *Franks*, 438 U.S. at 165).

## Discussion

Defendant claims the affidavit included deliberately or recklessly misstated facts. Specifically, Defendant asserts that: (1) the affidavit does not contain sufficient information about the veracity of the CI; (2) the two controlled buys described in the affidavit did not in fact occur; (3) the street address of Defendant's apartment was incorrect in the warrant affidavit; (4) the geographic description of the apartment unit was not sufficiently particular; and (5) APD's failure to follow its Standard Operation Procedures ("SOPs") supports a substantial showing that the search warrant affidavit contains intentional or recklessly false statements. Mot. at 9–16. The Court held a hearing on September 30, 2019. After considering the parties' arguments, the Court concludes that Defendant's request for a hearing on the veracity of the search warrant affidavit fails on the first prong of the *Franks* test.

1. Veracity of the CI

First, Defendant asserts that the CI's statements were uncorroborated and are insufficient to support probable cause. Mot. at 9. A probable cause determination includes an examination of the veracity, reliability, and basis of knowledge of the informant. *See Campbell*, 603 F.3d at 1234. "Generally, [courts] evaluate whether these factors as revealed by the facts in the affidavit create

5

a fair probability that contraband or evidence of a crime will be found in a particular place on consideration of the totality of circumstances." *Id.* (internal quotation marks omitted). Accordingly, "a deficiency in one factor may be compensated for by a strong showing of another." *Id.*

But "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). As the Tenth Circuit explained,

> [a] tip from an anonymous or confidential informant that narcotics are being distributed at a particular location may be corroborated through the arrangement of a controlled purchase at the suspect location. The common formalities observed by police officers when conducting such controlled purchases are as follows: the police search the informant (and his vehicle, if appropriate) for money and contraband prior to the buy; give the informant money with which to purchase the narcotics; transport the informant to the suspect residence (or follow the informant to the residence); watch the informant enter the suspect residence, disappear while inside the suspect residence, and emerge from the suspect residence; search the informant upon exiting the suspect residence; and receive the narcotics from the informant.

*United States v. Artez*, 389 F.3d 1106, 1111–12 (10th Cir. 2004) (footnote omitted). "So long as these common formalities are observed to a substantial degree, the corroborative value of such a controlled purchase is not significantly diminished by the type of background facts . . . regarding the informant's veracity or credibility." *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006).

Defendant argues that the affidavit does not sufficiently set forth the CI's basis of knowledge and reliability. But the actual controlled buys themselves sufficiently corroborated the CI's tip.[1] *See Artez*, 389 F.3d at 1111 ("A tip from a[ ] . . . confidential informant that narcotics

---

[1] Even without the corroborating controlled buys, the Court finds that the affidavit set forth sufficient detail regarding the CI's reliability and basis in knowledge. First, Detective Irwin stated the reasons he considered the CI reliable,

6

are being distributed at a particular location may be corroborated through the arrangement of a controlled purchase at the suspect location."). Indeed, Detective Irwin's description of the two controlled buys conform to the "common formalities" followed by law enforcement when conducting controlled buys. *Id.* at 1111–12. As described in *Artez*, Detective Irwin first searched the CI for drugs and currency, gave the CI money to purchase the drugs, and then drove the CI to the apartment. Doc. No. 60-1. Officers then observed the CI enter and exit the apartment unit, and then return to Detective Irwin's vehicle, at which point Detective Irwin obtained the drugs and again searched the CI. *Id.* Because Detective Irwin corroborated the CI's tip through the two controlled buys, Defendant's challenge to the veracity of the CI fails. *See, e.g.*, *Nelson*, 450 F.3d at 1214 ("Given the level of independent corroboration provided by the police surveillance of the confidential informant's controlled buys . . . , negative information about the confidential informant's credibility or veracity would not change the outcome because it does nothing to defeat a showing of probable cause. Consequently, no valid purpose is served by holding a *Franks* hearing . . . .").

2. Controlled buys

Defendant also suggests that the two controlled buys described in the affidavit did not occur. Specifically, Defendant argues that the report attached to the search warrant affidavit raises suspicion that the controlled buys may have been "either staged or falsified." Mot. at 14. Defendant asserts that the report number does not match any other numbers associated with the underlying

---

including that the CI had volunteered to work for monetary gain and knew that false information would jeopardize that arrangement, and that the CI's information had been independently corroborated and found to be truthful. Doc. No. 60-1. Further, the affidavit recounts that the CI provided details about the individual selling heroin, including that he went by "Daywoo," and the location where the heroin was being sold. *Id.*

case, no specific dates for the controlled buys are indicated, no information about Defendant is included on the report, and officers recorded the weight of drugs purchased as "00 g" and "0.3 g." *Id.*[2]

Evidence exists that two controlled buys did occur. Detective Irwin clearly described two controlled buys in the search warrant affidavit. *See* Doc. No. 60-1. Further, Defendant submitted exhibits to the Court that show the drugs seized by Detective Irwin following each controlled buy (Doc. No. 60-6) and APD's Incident Reports for each controlled buy (Doc. Nos. 60-4, 60-5). The United States sufficiently explained that the controlled buy Incident Reports document a date range for the buys and not the specific date of each buy to protect the identity of the CI. Response at 12. With respect to the weight of drugs, after the first controlled buy Detective Irwin indicated in his report that the total weight was 0.2 grams. Doc. No. 60-4. The weight appears not to have been documented on the evidence tag when the narcotics were accepted into evidence. *See* Doc. No. 60-6 at 1. The drugs from the second controlled buy also field tested positive, but Detective Irwin noted the weight as "00 grams." Doc. No. 60-5. The United States claims this is because he did not have a scale on the scene. Response at 11. The weight was later identified on the evidence bag as 0.3 grams. *See* Doc. No. 60-6 at 3. The Court does not see this as a discrepancy. Rather, it appears that officers recorded weights in different places following each controlled buy.

---

[2] Defendant argues that two additional circumstances justify a conclusion that officers fabricated the controlled buys. First, Defendant points out that all state charges were dismissed against Defendant's cohort, Ms. Alaniz, who was found in the house with Defendant at the time of the search and who had a criminal history. Doc. No. 60-11. Second, Defendant alleges that the state grand jury indicted him on a "baseless homicide charge that was held in reserve." Mot. at 14. Defendant does not explain how these speculative claims relate to allegedly false statements in the search warrant affidavit. Further, wholly speculative allegations are insufficient to support a *Franks* hearing. *See, e.g.*, *United States v. Long*, 774 F.3d 653, 662 (10th Cir. 2014) ("What is notably missing from this argument is any *evidence* that the allegations of the affidavit are false. It consists solely of speculation that if the affidavit were true, the police would have conducted further investigation . . . ." (emphasis in original)).

8

Accordingly, Defendant fails to make a substantial showing that APD fabricated the controlled buys.

   3. Street name

Next, Defendant points to the incorrect street name in the affidavit.[3] The street address appears in five places in the affidavit. Twice, the street address is correctly listed as "7301 Zuni Rd SE." Doc. No. 60-1. In one place the address appears incomplete, as "7301 Zuni SE." *Id.* But twice, in the supporting facts recounted by Detective Irwin, the address is listed as "7301 Zuni Blvd SE." *Id.* While that street name is incorrect in two instances, that mistake is not the type of deliberately misleading or recklessly false statement discussed in *Franks*. "Allegations of negligence or innocent mistake are insufficient." *Artez*, 389 F.3d at 1116. Here, the inaccurate address contained in the affidavit appears to be an innocent mistake. Indeed, the correct address appeared alongside the incorrect address in the affidavit. Thus, Defendant has not demonstrated that the misstated address was intentional or reckless.

   4. Particularity of the location to be searched

Defendant also argues that the search warrant affidavit does not describe the apartment unit to be searched with sufficient particularity. Reply at 5. Under the Fourth Amendment, "[t]he test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (quoting *United States v. Pervaz*, 118 F.3d 1, 9 (1st Cir. 1997)). Defendant asserts that the

---

[3] Notably, the street address is correct in the search warrant itself (Doc. No. 60-2).

description of the apartment unit in the warrant affidavit was not sufficiently particular for two reasons: (1) the affidavit states that the view of the apartment is obstructed by a tree from Zuni Road; and (2) the description of the unit to be searched is merely listed as "2nd floor, easternmost apartment." Doc. No. 60-1.

The Tenth Circuit requires that a search warrant affidavit "describe[ ] the premises with sufficient particularity so that the police [are able to] ascertain and identify the place to be searched." *United States v. Brakeman*, 475 F.3d 1206, 1211 (10th Cir. 2007) (describing the standard in the context of a technically wrong address). An apartment unit number is not necessarily required—an apartment "subunit may be sufficiently designated by geographical description." 2 Wayne R. LaFave *Search and Seizure* § 4.5(b) (1987). Here, the search warrant affidavit does not include the apartment unit number, but the affidavit contains a geographic description. The warrant clearly states that the unit to be searched is the easternmost apartment on the second floor. Doc. No. 60-1. The affidavit further provides that the unit faces south and the door was painted "read"—presumably red. *Id.* This description provided sufficient particularity for officers to locate the unit to be searched. Accordingly, the Court finds that the affidavit's description of the unit satisfies the Fourth Amendment's particularity requirement.

With respect to Defendant's other contention, the affidavit states that "[f]rom Zuni the apartment view is obstructed by a tree." Doc. No. 60-1. Based on that description, Defendant asserts that the affidavit's statement that law enforcement observed the two control buys must be false. The Court disagrees because "[t]he absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient." *Artez*, 389 F.3d at 1112. Here, the description of the obstructed view from Zuni Road does not negate the possibility

that an unobstructed view of the unit existed from other vantage points. Indeed, the affidavit describes the presence of other detectives observing both controlled buys. *Id.* It states that during both controlled buys, detectives observed the CI exit Detective Irwin's vehicle, enter and exit the apartment unit, and return to Defective Irwin's vehicle. *Id.* Again, Defendant fails to make a substantial showing that the statements in the affidavit describing the apartment unit are deliberately or recklessly false.

     5. Standard Operating Procedures

Defendant argues that APD's failure to follow its SOPs "presents a substantial showing that the statements made [in the affidavit] contain intentional or recklessly false statements." Mot. at 11. According to Defendant, due to APD's failure to properly document the investigation, the use of the CI, the inadequate tagging of evidence, "it is inconceivable and highly suspect that the search warrant affidavit detailing two control buys using a confidential informant could have taken place without any documentation related to the event." *Id.* Defendant, however, provides no proof in support of his contentions. Further, Defendant cites no authority for his argument that the failure to follow procedures should lead the Court to question the veracity of the affidavit itself. Nevertheless, the Court addresses each of Defendant's contentions.

With respect to SOP violations, Defendant argues that officers did not submit the drugs into the Officer Input Manual ("OIM"). Mot. at 13. The drugs obtained during the controlled buys, however, were accepted into evidence (Doc. No. 60-6), and the SOPs provide that "[t]he Evidence Technician retrieving the items will *reject* any items placed in evidence that are *not* entered into OIM." Doc. No. 60-8 (emphases added). Thus, Defendant fails to establish a violation of procedure with respect to the OIM.

Defendant also argues that certain reports and documentation of the controlled buy do not exist. Specially, Defendant claims that by the United States' own admission, no evidence log exists. Defendant claims this is a violation of SOP 2-73-2.E.2. *See* Doc. No. 60-8. For its part, the United States contests that it has made such an admission. The United States claims that an evidence log does exist and that Defendant has not in fact requested the evidence log. Response at 11. Even so, the United States argues that it is under no obligation to produce the evidence log because it relates to uncharged conduct and has no bearing on its case in chief. *Id.* The Court reviewed Defendant's Motion to Compel (Doc. No. 49) and confirms that Defendant never requested the disputed material. *Id.* at 12.

Defendant also claims that no "offense reports, intelligence reports, and/or informant profile sheets, or supporting tape recordings, expense reports, and/or receipts" exist describing the CI's role in the controlled buys. Mot. at 13. The United States argues that Defendant's claim is misleading. According to the United States, it informed Defendant that no other reports existed that would be responsive to Defendant's Nos. 1 and 2 in his motion to compel. Response at 12; *see also* Doc. No. 49 at 12; Transcript of Motion Hearing, Doc. No. 62-2 at 4. With respect to receipts and expense reports, the United States informed Defendant that there are internal receipts for the money, which would not be disclosed. Doc. No. 62-2 at 5. Finally, the United States clarifies that the reference "see supplemental reports" in the controlled buy reports refers to the supplemental narrative report documenting execution of the search warrant. *See* Doc. No. 60-4, 5. The Court concludes that Defendant's assertion that APD failed to follow its SOPs is speculative. Further, Defendant fails to connect how the alleged violations of SOPs implicates the truthfulness

of the affiant. *See Sanchez*, 725 F.3d at 1248 ("[t]he truthfulness at issue is that of the affiant . . . and honest errors by the affiant are not grounds for suppression.").

**Conclusion**

Defendant fails to make a substantial showing that the affiant deliberately or recklessly made false statements in the warrant affidavit. Accordingly, Defendant's allegations are insufficient to satisfy the *Franks* standard. Defendant's Motion (Doc. No. 60) is DENIED to the extent it seeks a *Franks* hearing. The Court will hold a hearing on Defendant's remaining arguments for suppression on October 21, 2019, at 1:30 p.m. in the Pecos Courtroom at Pete V. Domenici United States Courthouse.

_____
SENIOR UNITED STATES DISTRICT JUDGE