# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                                                Cr. No. 18-2665 JAP

    v.

DAVID JOHNSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On February 5, 2020, Defendant David Johnson filed a SECOND MOTION TO SUPPRESS THE SEARCH WARRANT AND REQUEST FOR EVIDENTIARY HEARING ("Motion") (Doc. 115). In that Motion, Defendant raised various arguments challenging the veracity of the affidavit supporting the warrant that authorized the search of Defendant's apartment.[1] Mot. at 1. Further, Defendant claimed that the search warrant was stale when executed by law enforcement officers. *Id.* The United States responded. *See* UNITED STATES' RESPONSE TO DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR EVIDENTIARY HEARING ("Response") (Doc. 118). On February 24, 2020, the Court held a hearing on the Motion. *See* CLERK'S MINUTES, filed Feb. 25, 2020 (Doc. 120). For the reasons below, the Court will deny Defendant's Motion.

---

[1] Defendant previously raised similar arguments. *See* DEFENDANT'S MOTION TO SURPRESS SEARCH WARRANT AND REQUEST FOR AN EVIDENTIARY HEARING ("first motion to suppress") (Doc. 60). The Court denied Defendant's first motion to suppress. *See* October 8, 2019, MEMORANDUM OPINION AND ORDER (Doc. 85).

BACKGROUND

1. Underlying Facts[2]

On May 23, 2018, a New Mexico Second Judicial District Court Judge signed a search warrant for the easternmost apartment on the second floor of the Zuni Princess Apartments, located at 7301 Zuni Rd SE, Albuquerque, NM 87108. Doc. 60-2. The judge issued the warrant based on an affidavit submitted by Albuquerque Police Department ("APD") Detective D. Irwin. Doc. 60-1. In the affidavit, Detective Irwin averred that he was part of the Central Narcotics Unit of the APD Special Investigations Division, and that he was experienced in the investigation of felony narcotics crimes, including undercover investigations involving the use of confidential informants. *Id.* at 1.

Detective Irwin stated in the affidavit that a confidential informant ("CI") had contacted him within the last three weeks and informed him that the CI could purchase heroin from an individual who lived in the easternmost apartment on the second floor at 7301 Zuni Blvd SE. *Id.* at 2. Detective Irwin conducted two controlled buys using the CI, the second within the 72 hours preceding his application for the warrant. *Id.* He stated that before each of the controlled buys he searched the CI for money or drugs and had found none. *Id.* Detective Irwin drove the CI to the apartment and then gave the CI money to purchase the heroin. *Id.* Detectives watched the CI walk from Detective Irwin's vehicle to the easternmost apartment on the second floor, knock and enter, and then emerge after a few minutes and return to Detective Irwin's undercover vehicle. *Id.* After re-entering the vehicle on each occasion, the CI gave Detective Irwin a plastic baggie containing a brown substance that later field tested positive for heroin. *Id.* Detective Irwin then searched the

---

[2] The Court's recitation of the facts is pulled primarily from the Court's October 8, 2019, Memorandum Opinion and Order. *See* Mem. Op. and Order at 2–4.

CI again and found no more drugs or money. *Id.* Both times, the CI told Detective Irwin that "Daywoo" sold the heroin to the CI. *Id.*

Detective Irwin stated that he identified "Daywoo" as Defendant through "independent investigation," and that the CI positively identified Defendant through a photograph. *Id.* He also noted that the CI voluntarily approached the officers to offer information on drug trafficking, and that the CI was being paid for the information and knew that false statements could result in termination as a CI and possible prosecution. *Id.* Detective Irwin stated that information from the CI had been corroborated and demonstrated to be factual. *Id.*

Based on these facts, Detective Irwin requested a search warrant for the easternmost apartment on the second floor of the Zuni Princess Apartments at 7301 Zuni Rd SE, Albuquerque, NM 87108. *Id.* at 1. He stated that the view of the apartment to be searched was obstructed by a tree when looking from Zuni, but that its door faced south, was painted "read," and appeared to be made of wood. *Id.* The apartment building was tan stucco with red trim, a red roof, and a brown sign in the southwest corner of the parking lot that read "Zuni Princess Apartments, 7301 Zuni S.E." in white letters. *Id.* Detective Irwin requested permission to search and seize "[a]ny and all firearms, ammunition, casings, and firearms equipment," among other things. *Id.*

On May 31, 2018, APD officers executed the search warrant. *See* Doc. 60-3. Officers found Defendant and an unidentified female in the apartment. Officers did not locate any heroin or currency, but they found and seized methamphetamine, drug paraphernalia, scales, marijuana, and a firearm. *Id.* APD arrested Defendant at the time of the search.

On July 18, 2018, a New Mexico state grand jury indicted Defendant on charges of trafficking by possession with intent to distribute and possession of a firearm or destructive device by a felon. Doc. 60-12. On July 25, 2018, the United States charged Defendant in federal court

with being a felon in possession of a firearm and ammunition. *See* Doc. 1. The State subsequently dropped its charges against Defendant.

2. The Hearing

On February 24, 2020, the Court held a hearing on the Motion. There, Detective Irwin testified about, among other things, general procedures for obtaining and executing a search warrant. Tr. at 8:6–10:2.[3] With respect to search warrant execution, Detective Irwin explained that on average, between six and nine law enforcement officers are required to execute a warrant, and that search warrant execution requires coordination of all their schedules. *Id.* at 8:14–23. Detective Irwin further testified that surveillance is normally conducted between the time a warrant is signed by a judge and when the warrant is executed. *Id.* at 9:9–13. During that period, Detective Irwin would, for example, look to see if there had been any changes to a residence, such as relocation of boxes on the front porch, changes to the window decor, or other changes that can be seen by "direct observation." *Id.* at 9:14–10:2.

In addition to describing the general procedures, Detective Irwin discussed the particulars of the search warrant and warrant execution in this case. Detective Irwin understands that under New Mexico law, law enforcement officers have ten days to execute a search warrant from the date the search warrant was issued. *Id.* at 14:20–22. Even so, Detective Irwin and his team executed the search warrant for Defendant's residence eight days after the search warrant was issued. *Id.* at 14:17–19. And during that time, Detective Irwin drove past the residence at least twice to conduct additional surveillance. *Id.* at 22:4–5. According to Detective Irwin, during those eight days he did not learn any new information that would indicate there had been any change at the residence. *Id.* at 15:13–17.

---

[3] TRANSCRIPT OF SECOND MOTION TO SUPPRESS HEARING ("Tr."), filed March 6, 2020 (Doc. 121).

## LEGAL STANDARD

The Fourth Amendment states "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[P]robable cause to issue a search warrant . . . exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). But when, as here, a defendant challenges the truthfulness of facts contained in the warrant affidavit, courts must undertake an analysis of the effect of the allegedly false information. Under *Franks v. Delaware*, 438 U.S. 154, 155 (1978), when a defendant challenges the veracity of an affidavit supporting a search warrant, courts assess the need for a hearing using a two-prong test. In such cases, a hearing should be held if (1) "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. Importantly, "[t]he truthfulness at issue is that of the affiant, not the affiant's sources (other than government employees, *see United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010)); and honest errors by the affiant are not grounds for suppression." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013); *see also Campbell*, 603 F.3d at 1228 (explaining that "negligence or innocent mistakes are insufficient to justify the exclusion of evidence."). Indeed, "[not] every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Sanchez*, 725 F.3d at 1247 (quoting *Franks*, 438 U.S. at 165).

DISCUSSION

1. Defendant's challenges to the search warrant affidavit

Defendant attacks the search warrant affidavit with respect to its supporting documentation. Specifically, Defendant challenges: (1) the controlled buys; (2) an unrelated homicide investigation; and (3) the street name of Defendant's residence.

First, Defendant argues, without any supporting case law, that

> the agent in charge of the alleged buys of heroin wishes the Court to believe that after 13 years of experience he set up two controlled undercover buys of heroin without taking his scales to the buy site nor having scales at a neutral site where he could accurately discern the weight of the alleged narcotics. He didn't photograph the money he allegedly provided for the purchases. The police reports supposedly documenting the purchase have different case numbers on them. They contain no names nor description nor designation of the drugs and no address except the police station at 400 Roma Avenue SW, Albuquerque.

Mot. at 4. Defendant, however, offers no connection between these assertions and the truthfulness of the search warrant affidavit.

A threshold requirement under *Franks* is that "the defendant make[] a substantial preliminary showing that a *false statement* knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Long*, 774 F.3d 653, 661 (10th Cir. 2014) (quoting *Franks*, 438 U.S. at 155) (emphasis added). While Defendant attacks certain facts or omissions in the controlled buy reports, Defendant does not identify any allegedly false statement contained in the affidavit itself. Without any evidence (or even allegation) that the search warrant affidavit was recklessly or intentionally false, Defendant has wholly failed to meet his burden for an evidentiary hearing under *Franks*. The speculation offered by Defendant is insufficient. *See, e.g.*, *Long*, 774 F.3d at 662 ("What is notably missing from this argument is any *evidence* that the allegations of the affidavit are false. It consists solely of speculation that if

6

the affidavit were true, the police would have conducted further investigation . . . ." (emphasis in original)).

Second, Defendant asserts that law enforcement officers did not interview him about the sale of heroin, but instead questioned him about a murder investigation. Mot. at 4–5. Defendant again fails to connect the questioning about a homicide investigation to the search warrant affiant's truthfulness. *See Sanchez*, 725 F.3d at 1247 ("The truthfulness at issue is that of the affiant . . . ."). Indeed, Detective Irwin—the affiant—testified that he was not present during any questioning about an APD homicide investigation. Tr. at 17:15–21. Because Defendant again fails to identify any allegedly false information contained in the search warrant affidavit, he has not satisfied his burden under *Franks*.

Finally, with respect to the erroneous street name contained in the search warrant affidavit, the Court has already considered this argument and rejected it. *See* Memo. Op. and Order at 9. Notably, the street address is correct in the search warrant itself. *Id.* at n.3 (citing Doc. 60-2). The Court will dedicate no more time to addressing that argument.

The Court's conclusion with respect to Defendant's *Franks* allegations is supported by Defendant's statement at the February 24, 2020, hearing. There, Defendant claimed that "if it[4] wasn't done purposefully, it was done negligently." Tr. at 50:17. But "negligence or innocent mistakes are insufficient to justify the exclusion of evidence." *Campbell*, 603 F.3d at 1228. As the Supreme Court explained in *Franks*, "the rule of exclusion does not extend . . . [to] 'instances where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination.'" *Id.* (quoting *Franks*, 438 U.S. at 170). As the Court has now repeatedly

---

[4] From the context at the hearing, the Court believes that "it" refers to allegedly false statements in the search warrant affidavit that Defendant has not identified.

stressed, Defendant makes no claim in his Motion that any of the information contained in the search warrant affidavit is false. Thus, the Court concludes that Defendant has not met his burden under *Franks*.

2. Staleness

Defendant asserts that the search warrant was untimely executed because eight days had passed between when a judge issued the warrant and when law enforcement officers executed it. According to Defendant, "by application of common sense," law enforcement officers should have known that the heroin they were searching for would not necessarily be at the residence eight days after the search warrant was issued. Mot. at 5. The Court disagrees with Defendant's characterization of what constitutes common sense and concludes that the information contained in the search warrant was not stale when law enforcement officers executed the search warrant.

New Mexico Rule of Criminal Procedure 5-211(C) sets a ten-day deadline for the execution of search warrants. N.M. R. Crim. P. 5-211(C). The federal counterpart to this rule, Federal Rule of Criminal Procedure 41(e)(2)(A)(i), provides that a warrant should be executed within 14 days of issuance. Thus, under both the state and federal rules, the execution of the search warrant was presumptively timely.

Even so, a warrant must be supported by probable cause. To that end, a warrant remains valid only as long as the information in the oath or affirmation supporting its issuance sets forth probable cause to believe the items sought will still be found in the place to be searched at the time the search is conducted. *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986). "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 984. "Thus, where the property sought is likely to remain in one place for a long time, probable cause may be found even

though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *Id.* Moreover, when "the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." *Id.*

Defendant relies on *Shomo*, 786 F.2d at 983, and *United States v. Garcia*, 707 F.3d 1190, 1195 (10th Cir. 2013), although neither case supports Defendant's contention that the search warrant was stale when executed. In *Shomo*, a United States Magistrate Judge issued a warrant to search the defendant's residence for a .38 caliber revolver. *Shomo*, 786 F.2d at 982. The affidavit in support of the search warrant explained that "a named informant had observed [the defendant] leave his residence approximately ten days earlier carrying a pistol in his pocket." *Id.* The defendant argued on appeal that the information supporting the search warrant was stale by the time the magistrate judge signed the warrant. The Court of Appeals, applying the principles detailed above, concluded that "the ten-day period between the time [the defendant] was seen carrying a revolver and the issuance of the warrant was not so long that the information contained in the affidavit had become stale." *Id.* at 984. Importantly, the court reasoned that it is normal for people to keep weapons in their homes and that it was reasonable for the magistrate judge to conclude that the revolver would still be located in the defendant's home after ten days. *Id.*

Similarly, in *Garcia*, police executed a search warrant nine days after the warrant was issued. Nevertheless, the Tenth Circuit concluded that there was probable cause to believe that drugs and items related to drug distribution were still in the defendant's house. 707 F.3d at 1195. In reaching that conclusion, the court noted that the affidavit supporting the search warrant described how, in the law enforcement officer's training and experience, "persons who use and deal in drugs normally maintain a supply of drugs in their residence along with other evidence of use and distribution." *Id.* Accordingly, the court concluded that "[t]he affidavit's statements

9

regarding continuous criminal activity situate this case within the case law making the passage of time less critical."

Contrary to Defendant's contention, these two cases support a conclusion that the search warrant in this case was not stale when executed. The Tenth Circuit has concluded probable cause existed in cases with longer waiting periods than is present here, but, more importantly, *Shomo* and *Garcia* make clear that the Court's staleness inquiry should focus on the nature of the alleged criminal activity, the length of the activity, and the nature of the property to be seized. *Shomo*, 786 F.2d at 984.

With respect to the nature of the criminal activity, the search warrant affidavit suggests that Defendant was suspected of trafficking narcotics from his residence. Specifically, the affidavit referenced two controlled buys where law enforcement officers observed the CI entering or exiting the same apartment. *See* Doc. 62-2 at 4. Both times, the CI returned with heroin. *Id.* Additionally, "the affidavit recites facts indicating ongoing, continuous criminal activity." *Shomo*, 786 F.2d at 984. For example, the search warrant affidavit explained that two controlled buys of heroin at Defendant's residence occurred within three weeks and 72 hours of the affiant's statement. This confirms that the alleged sale of heroin was ongoing. *See* Doc. 62-2 at 4. Finally, the search warrant provided for the seizure of heroin and any other controlled substances, drug paraphernalia, currency, and firearms, among other things. *See* Doc. 62-1 at 3. The Tenth Circuit has recognized that certain of these items—namely, drugs and weapons—are likely to remain at an individual's residence. *See Garcia*, 707 F.3d at 1195 (describing how individuals engaged in the sale of drugs often keep drugs and related items in their homes); *Shomo*, 786 F.2d at 984 ("[I]t is pretty normal . . . for individuals to keep weapons in their homes . . . .").

Further, although not strictly necessary, Detective Irwin testified that he conducted additional surveillance in the form of driving by Defendant's residence. Tr. at 22:4–5. During the eight days between the issuance of the warrant and its execution, Detective Irwin drove by Defendant's residence twice, *id.*, and neither time did he learn any new information that would indicate there had been a change at the residence, *id.* at 15:13–17.

At the hearing, Defendant asserted that his case is unlike *Shomo* and *Garcia*, despite relying on them in his Motion. He claims that in those cases, the Tenth Circuit "upheld the search warrant[s] [because] . . . what [law enforcement officers] were looking for was found." Tr. at 49:4–5. That, however, was not the focus of the Tenth Circuit's analysis. As the Court detailed above, in both cases the Tenth Circuit emphasized that the *nature* of the suspected criminal activity made the timing of the execution of the search warrants less consequential. *See Shomo*, 786 F.2d at 984 (explaining that "[i]t is reasonable to assume that [appellant's] house was where he kept things and it is pretty normal . . . for individuals to keep weapons in their homes . . . ." (bracket in original) (quoting *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir. 1975)); *Garcia*, 707 F.3d at 1195 (adopting the district court's reasoning that "people who use or sell drugs generally keep a ready stash in their house, in addition to other types of evidence that cannot be easily disposed of, and these items were likely to be found in the house, even after nine days.").

The Court concludes that the search warrant was supported by probable cause when issued, and it did not grow stale during the eight-day period between its issuance and execution.

It is therefore ORDERED that Defendant's SECOND MOTION TO SUPPRESS SEARCH WARRANT AND REQUEST FOR EVIDENTIARY HEARING (Doc. 115) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE